UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRIMBLE INC.,<br><br>        Plaintiff,<br><br>    v.<br><br>UNITY SOFTWARE INC.,<br><br>        Defendant. | Case No. 25-cv-10401-HSG<br><br>**ORDER DENYING PLAINTIFF'S EX PARTE MOTION FOR A TEMPORARY RESTRAINING ORDER**<br><br>Re: Dkt. No. 11 |

Pending before the Court is Plaintiff Trimble Inc.'s ("Trimble") *ex parte* motion for a temporary restraining order ("TRO"). The Court **DENIES** the request.

## I. BACKGROUND

Trimble is a technology company that develops software and hardware for a variety of industries, including construction, agriculture, utilities, transportation and surveying. Dkt. No. 11 at 8–9.[1] For the last seven years, Trimble has conducted business with Defendant Unity Software, Inc. ("Unity"), whose software components have been engineered into "certain Trimble software applications and hardware products" under successive one-year purchase orders. *Id.* at 9–10.

Trimble alleges that the parties' negotiations for this year's purchase order began to go south when Unity demanded a "distribution fee" for the first time in September 2025. *Id.* at 10–11. Trimble did not agree to the distribution fee but instead offered a higher per-unit royalty "in an effort to resolve the parties' dispute." *Id.* at 11. Unity rejected the higher offer. *Id.* Ultimately, Trimble renewed its license for the software under the renewal clause of the existing license and most recent purchase order. *Id.* at 12. Unity accepted Trimble's renewal subject to its

---

[1] Unless otherwise noted, all page numbers herein refer to the ECF headers at the top of the page.

right to negotiate and charge a distribution fee. *Id.* at 13.  Unity proposed a December 1, 2025 deadline to reach a "comprehensive agreement that includes the distribution fees for the renewal period. *Id*.

In late October, Unity affirmed that the license had been renewed, but it threatened to disable Trimble's access to its software unless Trimble paid the distribution fee. *Id.*  In various correspondence, the parties disputed which provisions of the contract governed the disputed distribution fee. *Id.* at 13–14; *see also* Dkt No. 11-2 (Meyerhoff Decl.) ¶¶ 22, 23, 24, Exs. 10 (November 5, 2025 email from Unity to Trimble), 11 (November 6, 2025 response from Trimble to Unity), and 12 (November 21, 2025 response from Unity to Trimble).  The parties were unable to resolve the dispute, and on December 2, 2025, Unity blocked Trimble's access to its software. Dkt. No. 11 at 15.  Two days later, Trimble filed suit. *See* Dkt. No. 1 ("Compl.").  Trimble's complaint seeks money damages and a declaratory judgment that Trimble has not breached the contract with Unity based on its refusal to pay a multimillion-dollar distribution fee. Compl. ¶ 1.[2] Immediately after filing its complaint, Trimble also filed an *ex parte* application for a TRO to enjoin Unity from blocking access by Trimble and its customers to Unity's software. Dkt. No. 11 at 6.  The Court ordered Unity to respond by December 11, 2025, which Unity did. Dkt. No. 16.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 65, a temporary restraining order may enjoin conduct pending a hearing on a preliminary injunction. *See* Fed. R. Civ. P. 65(b).  The standard for issuing a temporary restraining order and issuing a preliminary injunction are substantially identical. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001).  A plaintiff seeking preliminary relief must normally establish: (1) that he is likely to succeed on the merits; (2) that he is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest. *See Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008).  Preliminary relief is "an

---

[2] Unity contends that this dispute is subject to arbitration and moved to compel arbitration on December 11, 2025.  The Court plans to resolve that issue promptly once Trimble's opposition is filed.

1   extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled
2   to such relief." *Id.* at 22.  A court must find that "a certain threshold showing" is made on each of
3   the four required elements.  *Leiva-Perez v. Holder*, 640 F.3d 962, 966 (9th Cir. 2011).  Under the
4   Ninth Circuit's sliding scale approach, a preliminary injunction may issue if there are "serious
5   questions going to the merits" and "a balance of hardships that tips sharply towards the [movant], .
6   . . so long as the [movant] also shows that there is a likelihood of irreparable injury and that the
7   injunction is in the public interest."  *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th
8   Cir. 2011).

## III. DISCUSSION

"A plaintiff must do more than merely allege imminent harm sufficient to establish standing; a plaintiff must demonstrate immediate threatened injury as a prerequisite to preliminary injunctive relief." *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988). "Speculative injury cannot be the basis for a finding of irreparable harm." *In re Excel Innovations, Inc.*, 502 F.3d 1086, 1098 (9th Cir. 2007).  And mere financial injury "will not constitute irreparable harm if adequate compensatory relief will be available in the course of litigation." *Goldie's Bookstore, Inc. v. Superior Court*, 739 F.2d 466, 471 (9th Cir. 1984) (concluding that plaintiff's harm would be easily calculable in damages); *see Sampson v. Murray*, 415 U.S. 61, 90 (1974) ("The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.").  Simply put, "economic injury alone does not support a finding of irreparable harm, because such injury can be remedied by a damage award." *Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991).  "For these reasons, preliminary injunctions are rarely issued for breach of contract claims." *Int'l Medcom, Inc. v. S.E. Int'l, Inc.*, No. 15-cv-03839-HSG, 2015 WL 7753267, at *5 (N.D. Cal. Dec. 2, 2015) (collecting cases).

To support its claim of irreparable harm, Plaintiff submitted a single declaration from Scott Meyerhoff, Trimble's Vice President for Global IS Operations, Corporate Information Systems. Dkt. No. 11-3 ("Meyerhoff Decl.").  The declaration asserts that Unity's suspension of Trimble's

3

1  and its customer's access to Unity's software "threatens significant loss of goodwill and erosion of
2  Trimble's market share." *Id.* ¶ 28.  This disabling "would . . . disrupt the customers' own business
3  activities," causing a "loss of trust" in Trimble. *Id.* The declaration also indicates that Trimble
4  faces irreparable harm in the form of lost customers, current and prospective, because the
5  company's customers will "inevitably lose confidence in Trimble" and therefore "may choose to
6  procure competing products from other vendors" as a result.  *Id.* ¶ 29.  Based on this, Trimble
7  argues that damages are insufficient because it will be "practically impossible" to identify lost
8  customers.  Dkt. No. 11 at 19–20.

9  Although Mr. Meyerhoff's declaration posits a possibility that Trimble may suffer harm,
10 the Court finds its showing of irreparable harm inadequate.  *See Sampson*, 415 U.S. at 90 ("The
11 key word in this consideration is irreparable.  Mere injuries, however substantial, in terms of
12 money, time and energy necessarily expended in the absence of a stay, are not enough.").  As
13 Unity points out, Trimble's allegations are "far too speculative" to establish irreparable harm.
14 Dkt. No. 16 at 25.  Trimble has not identified a single customer that is likely to be lost absent an
15 injunction, much less any reports by customers about disruptions to their business operations due
16 to lost access to Unity's software components.  Nor has it identified any customers who have
17 expressed concern about Trimble's ability to support their business needs, or raised the possibility
18 of jumping ship to a competitor.  For this reason, perhaps, Trimble's application for a TRO speaks
19 to potentialities based on conclusory assertions.  *See* Dkt. No. 11 at 19 (Trimble's customers "*may*
20 choose to procure competing products from other vendors," because they "will inevitably lose
21 confidence in Trimble").  These speculative, conclusory statements are insufficient to show
22 irreparable harm.  *Caribbean*, 844 F.2d at 674 (reversing preliminary injunction where district
23 court did not require plaintiff to show the economic losses alleged were likely to occur or
24 imminent).  And while it is true that reputational harm may constitute irreparable harm in some
25 cases, *see Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 841 (9th Cir.
26 2001), Trimble must still allege more than conclusory statements amounting to "speculative
27 injury" about the potential for "los[t] goodwill and 'untold' customers." *Goldie's Bookstore, Inc.*,
28 739 F.2d at 472 (reversing district court's grant of preliminary injunction based on conclusory

allegations of loss of goodwill and potential customers). And even if Trimble's allegations were more concrete and less conclusory, "the loss of business relationships is an economic harm that can be valued." *Telephia Inc. v. Cuppy*, No. C 04-03508 SI, 2005 WL 588441, at *4 (N.D. Cal. Mar. 11, 2005). The Court finds that Trimble asserts economic harm that is remediable by money damages.

Trimble relies on several cases to argue that money damages are insufficient, and that the potential loss of business can support a finding of irreparable harm. None of these cases is binding, however, and the Court finds them distinguishable. Notably, the alleged harms in some cases went to the very foundation of the plaintiff's business. *See Sumotext Corp. v. Zoove, Inc.*, No. 16-cv-01370-BLF, 2016 WL 1259041, at *5 (N.D. Cal. Mar. 31, 2016) (finding, based on a detailed declaration by plaintiff's President, that plaintiff "will suffer enormous hardship in the form of loss of reputation and goodwill" and "potential loss of the business as a whole" given representation that the defendant's actions "would result in an immediate loss of 45% of Plaintiff's revenue"); *see also Signal Hill Serv. v. Macquarie Bank, Ltd.*, 2011 U.S. Dist. LEXIS 165858, at *47–48 (C.D. Cal. June 29, 2011) (finding irreparable harm where defendant sought to effect a non-judicial foreclosure of plaintiff's property that would "effectively [] destroy[]" its business and result in the "specter of bankruptcy proceedings"). And in other cases, plaintiffs alleged far more concrete harm based on existing or anticipated copyright infringement not at issue here. *See Newmark Realty Capital v. BGC Partners, Inc.*, 2017 U.S. Dist. LEXIS 228902, at *73 (N.D. Cal. Nov. 16, 2017) (finding irreparable harm in a trademark infringement suit where "numerous" third-party declarations established that the defendant was soliciting clients of the plaintiff, amounting to a concrete showing of lost business); *see also Niantic, Inc. v. Global++*, No. 19-cv-03425, 2019 WL 8333451, at *8 (N.D. Cal. Sept. 26, 2019) (finding the plaintiff alleged additional harm beyond non-performance of the contract based on a loss of control of copyrighted work due to defendant's anticipated infringement). And although "the Ninth Circuit has recognized that a loss of customers, business, or goodwill *can* constitute irreparable injury," *Newmark Realty Capital*, 2017 U.S. Dist. LEXIS 228902, at *72–73 (emphasis added), it does not follow that it always does. This is a fact-intensive determination, and Plaintiff's speculation that it

5

may lose customers and market share is insufficient to show irreparable injury given the clear showing required to obtain the extraordinary remedy of temporary injunctive relief.

Because Plaintiff has failed to meet its burden of demonstrating a significant threat of irreparable injury, the Court "need not decide whether [Plaintiff] is likely to succeed on the merits." *Oakland Tribune, Inc. v. Chronicle Pub. Co. Inc.*, 762 F.2d 1374, 1376 (9th Cir. 1985) ("Under any formulation of the test, plaintiff must demonstrate that there exists a significant threat of irreparable injury.  Because the Tribune has not made that minimum showing we need not decide whether it is likely to succeed on the merits.") (internal citations omitted).  For the same reasons, the Court declines to address the balance of the hardships and public interest factors. *See Mendia v. Breckenridge Prop. Fund 2016 LLC*, No. 20-CV-08090-JSW, 2021 WL 6500270, at *5 (N.D. Cal. Jan. 15, 2021).

## IV.    CONCLUSION

The Court **DENIES** Plaintiff's TRO application, Dkt. No. 11.

**IT IS SO ORDERED.**

Dated: 12/19/2025

HAYWOOD S. GILLIAM, JR.
United States District Judge