UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

TRIMBLE INC.,

    Plaintiff,

v.

UNITY SOFTWARE INC.,

    Defendant.

Case No. 25-cv-10401-HSG

**ORDER GRANTING MOTION TO COMPEL ARBITRATION**

Re: Dkt. No. 17

Pending before the Court is a motion to compel arbitration filed by Defendant Unity Software, Inc. Dkt. No. 17. The Court finds this matter appropriate for disposition without oral argument and the matter is deemed submitted. *See* Civil L.R. 7-1(b). The Court **GRANTS** the motion to compel arbitration.

## I. BACKGROUND

In December 2025, Plaintiff Trimble Inc. ("Trimble") filed a complaint against Defendant Unity Software Inc. ("Unity") alleging breach of contract and related claims. *See* Dkt. No. 1 ("Compl.") ¶ 1. Trimble alleges that Unity breached its contract, which concerns Trimble's one-year purchase order of Unity software. *Id.* ¶¶ 14–19. Specifically, Trimble alleges that Unity demanded a distribution fee not contemplated by Unity's Terms of Service, and when Trimble refused to pay the distribution fee, Unity cut off access to this software for Trimble and its third-party customers. *Id.* ¶¶ 20–23. Based on these facts, Trimble asserts four causes of action: breach of contract, breach of the implied covenant of good faith and fair dealing, tortious interference with contracts, and declaratory judgment. *Id.* ¶¶ 24–51.

Immediately after filing its complaint, Trimble filed an *ex parte* motion for a temporary restraining order ("TRO"), seeking to enjoin Unity from blocking access to its software. *See* Dkt.

No. 11. The Court directed Unity to respond to Plaintiff's request for a TRO, which it did, and Unity also filed a motion to compel arbitration. *See* Dkt. No. 17. Ultimately, the Court denied Trimble's motion for a TRO on the grounds that Trimble had "failed to meet its burden of demonstrating a significant threat of irreparable injury." Dkt. No. 25 at 6.[1]

## II. LEGAL STANDARD

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq.*, sets forth a policy favoring arbitration agreements and establishes that a written arbitration agreement is "valid, irrevocable, and enforceable." 9 U.S.C. § 2; *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 505 (2018) (noting federal policy favoring arbitration); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) (same). The FAA allows that a party "aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that . . . arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. This federal policy is "simply to ensure the enforceability, according to their terms, of private agreements to arbitrate." *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Jr. Univ.*, 489 U.S. 468, 476 (1989). Courts must resolve any "ambiguities as to the scope of the arbitration clause itself . . . in favor of arbitration." *Id*.

When a party moves to compel arbitration, the court must determine (1) "whether a valid arbitration agreement exists" and (2) "whether the agreement encompasses the dispute at issue." *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004). The agreement may also delegate gateway issues to an arbitrator, in which case the court's role is limited to determining whether there is clear and unmistakable evidence that the parties agreed to arbitrate arbitrability. *See Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015). In either instance, "before referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019) (citing 9 U.S.C. § 2).

---

[1] Unless otherwise noted, all page numbers herein refer to the ECF headers at the top of the page.

### III. DISCUSSION

The parties agree that Unity's Terms of Service contain a valid and enforceable arbitration agreement. *See* Dkt. No. 17 at 10; *see also* Dkt. No. 29 at 2. The arbitration agreement expressly invokes the FAA, and it includes a delegation clause:

> . . . any dispute arising out of, relating to or in connection with these Terms (including any disputes regarding the existence, validity, interpretation, performance, breach or termination thereof or any dispute regarding non-contractual obligations arising out of or relating to be) will be referred to and finally resolved by binding arbitration administered by the American Arbitration Association ("AAA") under the AAA's Commercial Arbitration Rules . . .

Dkt. No. 11-3, Declaration of Scott Meyerhoff Declaration ISO Trimble's Motion for TRO ("Meyerhoff Decl.") ¶ 32 and Exhibit 15 ("Unity Terms of Service") at 28. In limited circumstances, the arbitration agreement allows a party to seek relief from a court. Specifically, "either Party may seek temporary, preliminary or other expedited or provisional injunctive relief (but not money damages) from any court of competent jurisdiction pending the constitution of an arbitral tribunal." *Id.* at 31.

Unity argues that Trimble's claims fall squarely within the arbitration agreement, and that in any case, the delegation clause delegates issues of arbitrability to the arbitrator. *See* Dkt. No. 17 at 10–12. Trimble concedes that the arbitration agreement is "valid" and "binding," Dkt. No. 29 at 2, but it responds that because its tortious interference with contract claim "sounds in tort," it falls outside the scope of the arbitration clause.[2] *See id.* at 3. The Court finds that the delegation clause is dispositive.

"[U]nlike the arbitrability of claims in general, whether the court or the arbitrator decides arbitrability is 'an issue for judicial determination unless the parties *clearly and unmistakably provide otherwise.*'" *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1208 (9th Cir. 2016) (quoting *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1072 (9th Cir. 2013)). A delegation clause is "an agreement to arbitrate threshold issues concerning the arbitration agreement." *Rent-a-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68 (2010). It allows parties to "agree to arbitrate

---

[2] Unity also argues that Trimble's three other claims are subject to arbitration. *See* Dkt. No. 17 at 10–12. Trimble did not substantively address these arguments in its opposition.

3

1 gateway questions of arbitrability" including whether the arbitration agreement "covers a
2 particular controversy." *Id.* at 68–69 (citations and quotations omitted). The Ninth Circuit has
3 held that the "incorporation of the AAA rules constitutes clear and unmistakable evidence that
4 contracting parties agreed to arbitrate arbitrability." *Brennan*, 796 F.3d at 1130. Following
5 *Brennan*, courts regularly compel arbitration where the arbitration agreement incorporates the
6 AAA rules. *See, e.g.*, *Fli-Lo Falcon, LLC v. Amazon.com, Inc.*, 97 F.4th 1190, 1199–1201 (9th
7 Cir. 2024) (affirming district court's order compelling arbitration where agreement incorporated
8 AAA Commercial Arbitration rules); *see also In re BAM Trading Servs. Inc. Sec. Litig.*, 733 F.
9 Supp. 3d 854, 865 (N.D. Cal. 2024) (finding that arbitration agreement sufficiently invoked AAA
10 rules to delegate arbitrability where it stated "Arbitration shall be conducted in accordance with
11 the rules of the American Arbitration Association").

12 The Court finds that the arbitration agreement here clearly and unmistakably establishes
13 that the parties agreed to arbitrate arbitrability. It indicates that threshold issues are subject to
14 arbitration, including any dispute about the "validity [or] interpretation" of the agreement. *See*
15 Unity Terms of Service at 28. And it expressly invokes the AAA Commercial Arbitration Rules.[3]
16 *See id.* Under *Brennan*, this is enough to "show[] a clear and unmistakable intent to delegate
17 arbitrability to an arbitrator." *Id.* at 1131.

18 Unlike the plaintiffs in *Fli-Lo Falcon* and *In re BAM Trading*, Trimble does not argue that
19 the delegation clause is unconscionable; in fact, Trimble's opposition ignores the delegation clause
20 entirely. Instead, Trimble solely relies on the argument that its tortious interference claim does not
21 fall within the scope of the arbitration agreement. *See* Dkt. No. 29. But that argument is beside
22 the point, because the parties agreed to resolve that dispute in arbitration. And none of the cases
23 Trimble relies on for this argument considered a delegation clause. *See Rice v. Downs*, 248 Cal.
24 App. 4th 175, 187–190 (2016) (concluding, in a case that did not involve a delegation clause, that

---

[3] Rule 7(a) of the AAA Commercial Arbitration Rules provides that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim, without any need to refer such matters first to a court." American Arbitration Association, Commercial Arbitration Rules and Mediation Procedures R-7(a) (Sept. 1, 2022).

4

"the arbitration provision encompasses contractual claims and perhaps even tort claims arising from the agreement," but not tort claims based on violations of an independent duty or right); *see also Howard v. Goldbloom*, 30 Cal. App. 5th 659, 664–667 (2018) (no delegation clause at issue). Under these circumstances, where the Court is faced with a clear and unmistakable delegation clause, it does not interpret the scope of the agreement, because that threshold issue must be decided by the arbitrator.

## IV. CONCLUSION

Accordingly, the Court **GRANTS** the motion to compel arbitration and **STAYS** the case pending completion of arbitration. The parties are further **DIRECTED** to file a joint status report regarding the status of the arbitration proceeding 120 days from the date of this order and every 120 days thereafter unless otherwise ordered.

**IT IS SO ORDERED.**

Dated:   1/7/2026

HAYWOOD S. GILLIAM, JR.
United States District Judge